FILED
2016 Mar-02  PM 04:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **SHARON BLAIR,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  4:13-CV-1789-VEH** |
| | ) |
| **METROPOLITAN LIFE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.    Introduction and Procedural History

On August 22, 2013, Plaintiff Sharon Blair ("Ms. Blair") initiated this long-term disability benefits case against Defendant Metropolitan Life Insurance Company ("MetLife") in the Circuit Court of Etowah County. (Doc. 1-1 at 2-4; Doc. 29-1 at 2-4).[1] MetLife removed Ms. Blair's state court action to this court on September 26, 2013, on the basis of federal preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 1; *id.* at 2-3 ¶¶ 5-6).

Prior to that, on April 3, 2012, Ms. Blair had filed an essentially indistinguishable long-term disability benefits case against MetLife in Etowah

---

[1]  All page references to Doc. 1-1 and Doc. 29-1 correspond with the court's CM/ECF numbering system.

County, which action MetLife similarly removed to federal court ("*Blair I*")[2] on May 3, 2012. (Doc. 1; Doc. 1-1 at 3-4).[3] On May 12, 2014, this case ("*Blair II*") was stayed and administratively closed (Doc. 20) while the Eleventh Circuit considered the merits of an appeal in *Blair I* (Doc. 37) filed by Ms. Blair on July 23, 2013.

The Eleventh Circuit decided *Blair I* in favor of MetLife in an unpublished opinion–*Blair v. Metlife*, 569 F. App'x 827 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1414, 191 L. Ed. 2d 364 (2015)–issued initially on June 23, 2014, by the Eleventh Circuit (*see Blair II*, Doc. 29-2 at 2)[4] and subsequently entered as a mandate in *Blair I* (Doc. 40 at 2) on November 3, 2014. On June 16, 2015, the court lifted the stay and reinstated *Blair II* (Doc. 27) in light of Ms. Blair's unwillingness to accept the outcome in *Blair I* as dispositive of her long-term disability claim in *Blair II*. (Doc. 26).

Currently pending before the court are the following four motions:

- Ms. Blair's Motion To Allow Amended Complaint (Doc. 28) (the "Amend Motion") on filed June 17, 2015;

- MetLife's Renewed Motion To Dismiss (Doc. 29) (the "Dismissal Motion") filed on June 29, 2015;

---

[2] The CM/ECF district court case number for *Blair I* is 4:12-CV-1776-JEO.

[3] All page references to Doc. 1-1 of *Blair I* correspond with the court's CM/ECF numbering system.

[4] All page references to Doc. 29-2 correspond with the court's CM/ECF numbering system.

- Ms. Blair's Motion To Allow Sur Reply (Doc. 36) (the "Sur Reply Motion") filed on July 31, 2015; and

- Ms. Blair's Motion To Compel (Doc. 37) (the "Compel Motion") filed on August 21, 2015.

For the reasons stated below, the court finds that MetLife's Dismissal Motion is due to be granted in part and otherwise denied, Ms. Blair's Amend Motion is due to be denied as futile, and the remaining two motions are due to be termed as moot or, alternatively, denied.

## II.   Standards

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain

statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that

4

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

### B.    Futility

"When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessary fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999). The futility standard is comparable to that applicable to a motion to dismiss. *See B.D. Stephenson Trucking, L.L.C. v. Riverbrooke Capital*, No. 5:06-CV-0343-WS, 2006 WL 2772673, at *6 (S.D. Ala. 2006) ("The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))); *see also Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (affirming district court's denial of amendment as futile because purported cause of action "would not withstand a motion to dismiss").

5

### III.   Analysis

### A.   MetLife's Dismissal Motion

#### 1.   *Blair I* Background and Holdings

In November 2007, Ms. Blair made a long-term disability claim (the "LTD Claim") under the Progressive Corporation Group Long Term Disability Plan (the "Plan"). MetLife is the claims administrator for the Plan. Initially, MetLife approved Ms. Blair's LTD Claim. However, in November 2008, MetLife denied it, finding that Ms. Blair had failed to provide supporting evidence of her continued disabled status under the Plan.

Ms. Blair administratively appealed the subsequent denial of her LTD Claim. MetLife (i) conducted an appeal review, (ii) concluded on January 30, 2009, that she was not disabled as defined by the LTD Plan, and (iii) advised Ms. Blair that she had exhausted her administrative remedies. Thus, January 30, 2009, is the date on which MetLife issued its final denial of Ms. Blair's LTD Claim.

Through her counsel (who is the same lawyer who has represented her throughout *Blair I* and *Blair II*), Ms. Blair, in June 2009, requested that MetLife conduct a second review of her LTD Claim. Even though the Plan provides for only one administrative review, MetLife agreed to undergo a second, courtesy review of Ms. Blair's LTD Claim. While this courtesy review was pending, Ms. Blair submitted

additional records to MetLife in support of her LTD Claim. Ms. Blair filed her appeal

in *Blair I* before MetLife gave her a decision on its courtesy review.

In *Blair I*, the Eleventh Circuit rejected Ms. Blair's contention that MetLife

violated ERISA by not considering certain evidence which she submitted as part of

her so-called "second appeal" to MetLife:

> First, there was no "second appeal." MetLife was not required under the
> Plan to review extra materials after it had denied her first appeal. Blair
> not only received a timely decision on her initial claim but also a full
> administrative appellate review of her claim in accordance with the
> terms of the Plan. At that point, Blair was free to file suit in federal court
> because she had exhausted her administrative remedies. Yet, she
> requested MetLife to conduct an additional administrative review of her
> claim, which MetLife was not contractually bound, but voluntarily
> agreed, to do. Moreover, our case law is clear that we are limited to only
> those documents that were before the administrator at the time the
> decision was made. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*,
> 890 F.2d 1137, 1139 (11th Cir. 1989) (noting that a review of the
> administrator's determination is "based upon the facts as known to the
> administrator at the time the decision was made"); *Turner v. Delta
> Family–Care Disability & Survivorship Plan*, 291 F.3d 1270, 1273
> (11th Cir. 2002) (per curiam) (stating that the court's review is "based
> on the evidence of record"). The documents Blair sent to MetLife over
> the two years following the denial of her administrative appeal were not
> part of the record considered when determining whether to deny Blair's
> LTD benefits. Accordingly, the district court is affirmed as to this issue.

569 F. App'x at 832 (emphasis added).

2.     **The Eleventh Circuit's opinion in *Blair I* means that Ms. Blair's LTD Claim asserted in *Blair II* is not plausible under ERISA.**

While the allegations vary slightly, *Blair I* and *Blair II* are substantively identical ERISA lawsuits. For example, *Blair I* and *Blair II* both seek redress from MetLife's final denial of Ms. Blair's LTD Claim under the Plan on January 30, 2009. (*Compare Blair I*, Doc. 1-1 at 3 ¶ 4 ("Plaintiff filed a written appeal and Defendant issued a final denial on January 30, 2009."), *with Blair II*, Doc. 1-1 at 2 ¶ 4 ("MetLife denied LTD benefits and MetLife denied Blair's administrative appeal on 1/30/09.")).

More specifically, both cases urge that MetLife had an ERISA-driven obligation to reconsider Ms. Blair's LTD Claim in conjunction with those additional documents that she submitted to MetLife after its final denial in January 2009. (*Compare Blair I*, Doc. 1-1 at 3 ¶¶ 6-7 (referencing new submissions made to MetLife after its final denial of Ms. Blair's LTD Claim), *with Blair II*, Doc. 1-1 at 2 ¶¶ 5-8 (same)); (*compare also Blair I*, Doc. 1-1 at 3 ¶ 8 ("Defendant has exceeded the 45 day deadline."), *with Blair II*, Doc. 1-1 at 3 ¶ 12 ("Defendant has never issued a decision on Plaintiff's second appeal.")). *Blair I* and *Blair II* also seek identical relief. (*Compare Blair I*, Doc. 1-1 at 3 ("WHEREFORE, Plaintiff prays for appropriate equitable relief, attorney fees and costs which are more than $50,000."), *with Blair II*, Doc. 1-1 at 4 (same)).

In its Dismissal Motion, MetLife maintains that due to *Blair I* and *Blair II*'s interrelatedness and common nucleus of operative facts, either res judicata or collateral estoppel flowing from the finality of *Blair I* operates to bar Ms. Blair's pursuit of her LTD Claim in *Blair II*. Ms. Blair counters that her second suit against MetLife for "wrongful termination of LTD benefits is not barred by [either doctrine]." (Doc. 34 at 1 ¶ 3; *id.* at 16-20; *id.* at 23-25). Although following Ms. Blair's rambling arguments in opposition to MetLife's Dismissal Motion is an arduous endeavor,[5] the gist of her position appears to be that res judicata and/or collateral estoppel cannot apply because MetLife never has considered, much less issued a decision directly addressing the impact of the additional evidence that she submitted in support of her LTD Claim and *Blair I* does not foreclose her from pursuing a second cause of action under ERISA premised upon such new and differing disability-related documentation

---

[5] Sloppily sandwiched between Ms. Blair's res judicata/collateral estoppel contentions is a section about how judicial estoppel should operate to prevent MetLife from taking inconsistent positions in *Blair II* versus *Blair I*. (Doc. 34 at 20-23). Ms. Blair has not cited to a single case in which judicial estoppel has ever been applied in an ERISA lawsuit. Instead, Ms. Blair references *New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001), a state-boundary dispute, and *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), an employment discrimination lawsuit, as her supportive authorities. (Doc. 34 at 21-22). To the extent that judicial estoppel is even a permissible equitable concept in this benefits-driven ERISA action, *see infra* at 15-16 n.10 and the court's discussion of *Varity* and other cases *infra* at 16-18, the court rejects Ms. Blair's reliance upon the doctrine as she has not demonstrated that MetLife has taken a position in *Blair II* that is "clearly" incompatible (Doc. 34 at 22) with any of its stances in *Blair I*. Instead, MetLife's twofold theme throughout *Blair I* and *Blair II* consistently has been that: (i) Ms. Blair has no right to a "second appeal" under ERISA, and (ii) she cannot create cognizable liability based upon MetLife's subsequent voluntary acceptance of documents related to her otherwise administratively exhausted LTD Claim.

at issue in *Blair II*.

Assuming without deciding that defending on the grounds of res judicata or collateral estoppel is an overreach given the current status of this record,[6] the court,

---

[6] Ms. Blair points out that MetLife, the party invoking res judicata and collateral estoppel, has not cited to a case in which either doctrine has been applied in an ERISA action procedurally comparable to hers. (Doc. 34 at 24-25). Conversely, Ms. Blair has not referred to a decision which suggests that reliance upon such a defense is somehow inappropriate in this instance. *Id.*

The Eleventh Circuit's ERISA opinion in *Ogden*, discussed *infra* at 16-18, commented that while the district court's application of res judicata was not challenged on appeal, it "was undoubtedly correct." 348 F.3d at 1286 n.2. More specifically, the record in *Ogden* included a bench trial in which "the district court found that the principles of res judicata barred the Ogdens' claim for legal relief" under Section 502(a)(1)(B) by virtue of an earlier state court proceeding. 348 F.3d at 1286. The district court further determined that "the Ogdens were entitled to equitable relief under ERISA Section 502(a)(3), even though they had never asked for an equitable remedy." *Id.* The Eleventh Circuit held "that an ERISA plaintiff has no cause of action under Section 502(a)(3) where Congress provided for an adequate remedy elsewhere in the ERISA statutory framework, even if res judicata now bars the adequate remedy provided." *Ogden*, 348 F.3d at 1285.

The record in this case is significantly less developed than the bench trial referenced in *Ogden*. Additionally, in conducting its own research, the court has found at least one binding authority that brings into question the procedural propriety of addressing res judicata and collateral estoppel on a Rule 12(b)(6) record. As the Eleventh Circuit explained in *Concordia v. Bendekovic*, 693 F.2d 1073 (11th Cir. 1982):

In the case at bar, the defendants have raised the defense of res judicata [or collateral estoppel as indicated by a footnote] in the form of a Rule 12(b)(6) motion supported by the exhibits above mentioned. Res judicata, however, is not a defense under 12(b); it is an affirmative defense that should be raised under Rule 8(c). *Moch v. East Baton Rouge Parish School Board*, 548 F.2d at 596 n.3; *Sherwood v. Pearl River Valley Water Supply District*, 427 F.2d 717 (5th Cir.) (Godbold, J., dissenting), cert. denied, 400 U.S. 832, 91 S. Ct. 64, 27 L. Ed. 2d 63 (1970); *Guam Investment Co. v. Central Building, Inc.*, 288 F.2d 19, 24 (9th Cir. 1961). Nevertheless a party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint. *Pearl River Valley*, 427 F.2d at 718 (Godbold, J., dissenting); *Guam Investment Co.*, 288 F.2d at 24 ("It appears to us that before an action may be summarily dismissed on the ground of res judicata the ends of justice require as a minimum that the defense of res judicata appear from the face of the complaint or that the record of the prior case be received in

nonetheless, concludes that the Dismissal Motion is due to be granted. In particular, the court adopts as persuasive authority the Eleventh Circuit's unpublished decision in *Blair I* and applies it to *Blair II*. As *Blair I* instructs, once a final denial of an ERISA claim has occurred and the claims administrator has advised the plaintiff that she has exhausted her administrative remedies, a plaintiff's subsequent submissions in support of her finally-determined benefits claim, even if voluntarily accepted by the administrator, do not expand the scope of the record for determining ERISA liability. Instead, those records are meaningless non-events insofar as an administrator's exposure to ERISA liability is concerned.

Here, there is no allegation that Ms. Blair ever filed a new application for long-term disability benefits under the Plan that includes both pre-January 2009 and post-January 2009 records that she contends confirm her still-disabled status. (*See* Doc. 36 at 3 ¶ 2 ("Blair has not filed a new application for benefits."));[7] (*cf. Blair I*, Doc.

---

evidence."); *Florasynth Laboratories, Inc. v. Goldberg*, 191 F.2d 877 (7th Cir. 1951). We must first address whether the record affords sufficient information from which the district court could dismiss the complaint on the grounds of res judicata.

*Concordia*, 693 F.2d at 1075 (emphasis added). Here, the face of the complaint in *Blair II* expressly disavows the presence of res judicata or collateral estoppel (Doc. 1-1 at 4 ¶ 16) and the record from *Blair I* has not been received in *Blair II*. *See Concordia*, 693 F.2d at 1076 ("As a general rule, a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence." (internal quotation marks omitted) (emphasis added) (quoting *Guam*, 288 F.2d at 23)).

[7] All page references to Doc. 36 correspond with the court's CM/ECF numbering system.

35 at 42 n.17 ("The court expresses no opinion on whether Plaintiff might be entitled to file another application for LTD benefits under the Plan or, if she were to do so, how the additional evidence she submitted after the denial of her appeal might impact a disability determination by MetLife.")). Consequently, the universe of documents that MetLife is legally obligated to consider under ERISA is limited to only those that Ms. Blair submitted prior to January 30, 2009. *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir. 1989))).

Concomitantly, no ERISA liability in *Blair II* can lie for MetLife's failure to render a replacement disability decision factoring in those additional untimely submitted records that it undertook to review only as a courtesy to Ms. Blair. As the Eleventh Circuit explained in *Blair I*, MetLife cannot be ordered to "reconsider [Ms. Blair's] claim in light of the evidence she failed to timely submit and which MetLife had no legal obligation to consider, under either the terms of the Plan or ERISA itself." *Blair I*, 569 F. App'x at 830; *see Harvey v. Standard Ins. Co.*, 503 F. App'x 845, 849 (11th Cir. 2013) ("However, the district court correctly determined that Standard did not unreasonably disregard these documents as they were not submitted

12

to Standard until *after* it had rendered a final decision on her administrative appeal on March 15, 2010[;] [i]nstead, Harvey submitted these documents as part of her subsequent voluntary review . . . .") (emphasis in original);[8] *id.* ("Therefore only the record before Standard during its consideration of Harvey's initial claim or administrative review thereon is relevant."); *cf. McCay v. Drummond Co.*, 509 F. App'x 944, 949 (11th Cir. 2013) (rejecting plaintiff's position that "there is a continuing duty [to consider any new evidence], <u>regardless of whether the final determination has been reached on his claim</u>, regardless of whether the plaintiff made an effort to exhaust the administrative remedies available to him, and regardless of whether the plaintiff is even employed or still a participant in the Plan") (emphasis added).[9] Stated differently, because under *Blair I* MetLife had no ERISA-based obligation to evaluate those late-submitted materials from Ms. Blair in an attempt to resurrect her denied LTD Claim, MetLife similarly cannot be held liable in this case for failing to follow through on that same voluntary process. Therefore, *Blair I* means that *Blair II* seeks redress against MetLife that is implausible.

The court rejects Ms. Blair's efforts to create a plausible ERISA claim by asserting waiver on the part of MetLife by virtue of its voluntary decision to undergo

---

[8] Ms. Blair's counsel in *Blair I* and *Blair II*, Myron Allenstein ("Mr. Allenstein"), is listed as an attorney of record for the plaintiff in *Harvey*.

[9] Mr. Allenstein is also listed as an attorney of record for the plaintiff in *McCay*.

a second courtesy review of Ms. Blair's LTD Claim. (Doc. 34 at 11-16). The Eleventh Circuit has described waiver in the context of an ERISA case as "the voluntary, intentional relinquishment of a known right." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994) (citing *Pitts by and through Pitts v. American Security Life Ins. Co.*, 931 F.2d 351, 355 (5th Cir. 1991)). Ms. Blair suggests that because the Eleventh Circuit has not completely foreclosed a plaintiff's right to assert waiver in an ERISA dispute, *see Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1348 (11th Cir. 1994) ("declin[ing] to incorporate as part of the federal common law of ERISA a 'something-for-nothing' waiver claim[,]" with respect to mistakes made by the insurer in dealing with the eligibility of some enrollees, but "leav[ing] open whether in other circumstances waiver principles might apply under the federal common law in the ERISA context"), *Blair II* states a cognizable claim. However, merely leaving the door open for waiver to <u>conceivably</u> become viable under ERISA-federal common law by no certainty means that waiver, <u>if ever expressly embraced in this circuit</u>, would <u>plausibly</u> apply to this set of facts. *See Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51 (instructing that merely conceivable claims fall short of satisfying Rule 8's line of plausibility); *cf. Glass*, 33 F.3d 1347 ("[N]ot all common law insurance principles automatically apply to ERISA-regulated insurance policies."); *cf. also id.* ("In the Eleventh Circuit we have created a <u>very</u>

narrow common law doctrine under ERISA for equitable estoppel . . . .") (emphasis added); *id.* at 1347 n.5 ("ERISA waiver principles, <u>if</u> they emerge in this circuit, may be quite distinct from state waiver law, and parties should recognize this.") (emphasis added).

Moreover, in light of *Blakenship*'s binding guidance about the proper scope of the administrative record and the persuasive insight gleaned from *Blair I*, *Harvey*, and *McCay*, the court strongly doubts that the Eleventh Circuit will ever apply waiver to sustain an ERISA benefits claim premised upon an insurer's willingness to undergo a courtesy review of supplemental records, <u>which non-mandatory process is then circumvented by a plaintiff's intervening appeal to federal court in a related action the challenges the final denial of the same long-term disability claim</u>. Indeed, allowing waiver to apply to such a situation resembles the "something-for-nothing" waiver claim squarely rejected by the Eleventh Circuit in *Glass*–MetLife has equitably opened the door to ERISA benefits liability for initiating, but not completing, the courtesy review or voluntary reconsideration of her LTD Claim even though Ms. Blair was given all the review that she was contractually due to receive from MetLife under the Plan.[10]

_____

[10]  Permitting such a waiver application would also seem to run afoul of the Supreme Court's decision in *Varity* and the Eleventh Circuit's opinions in *Ogden* and *Katz*, discussed *infra* at 16-18, as a plan participant would be invoking the equitable principle of waiver, presumably pursuant to

Finally, to the extent that Ms. Blair is attempting to recast her LTD Claim in *Blair II* as an equitable one arising under Section 502(a)(3),[11] MetLife correctly points out that, because she otherwise has an adequate remedy "elsewhere in the ERISA's statutory framework[,]" *see Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1288 (11th Cir. 2003) (quoting *Hembree v. Provident Life and Accident Ins. Co.*, 127 F. Supp. 2d 1265, 1274 (N.D. Ga. 2000)), she is precluded from pursuing relief under ERISA's catchall equitable enforcement provision.

As the *Ogden* court summarized the Supreme Court's limitations placed upon the availability of relief under Section 502(a)(3):

> We explained in *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084 (11th Cir. 1999), that an ERISA plaintiff who has an adequate remedy under Section 502(a)(1)(B) cannot alternatively plead and proceed under Section 502(a)(3). *Id.* at 1088-89. We also recognized that an ERISA plaintiff that had an adequate remedy under Section 502(a)(1)(B) cannot assert a Section 502(a)(3) claim after his Section 502(a)(1)(B) claim has been lost. *Id.* at 1089.

---

Section 502(a)(3), to save an otherwise administratively exhausted or "lost" claim under Section 502(a)(1)(B).

[11] It appears from certain portions of Ms. Blair's opposition and sur reply that in *Blair II* she exclusively seeks disability benefits under Section 502(a)(1)(B). (*See, e.g.*, Doc. 34 at 26 ("Blair is not making equitable claims.")); (Doc. 36 at 4 ¶ 3 (indicating that "[c]ounsel for Blair routinely requests equitable relief" under Section 502(a)(3), but clarifying that "[i]n this case she specifically requests LTD benefits" under Section 502(a)(1)(B))); *see also* 29 U.S.C. § 1132(a)(1)(B) (allowing participant to file suit "to recover benefits due to him under the terms of his plan"). However, these statements are inconsistent with Ms. Blair's attempts to invoke judicial estoppel and waiver in opposition to MetLife's Dismissal Motion, which concepts are founded in equity. *See supra* at 9 n.5 and 15-16 n.10.

In *Katz*, we affirmed a district court's finding on summary judgment that, pursuant to the Supreme Court's holding in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996), an ERISA plaintiff could not state a valid claim for equitable relief when Section 502(a)(1)(B) afforded her with an adequate remedy, even though her Section 502(a)(1)(B) claim was subsequently lost on the merits. *Katz*, 197 F.3d at 1089. In *Varity*, the Supreme Court held that a class of ERISA beneficiaries had stated a claim for injunctive relief under Section 502(a)(3) and reinstated them to their former employer's welfare benefit plan. *Varity*, 516 U.S. at 504-14, 116 S. Ct. at 1075-79. In so holding, however, the Supreme Court emphasized that <u>Section 502(a)(3) is a "catchall" provision that provides relief only for injuries that are not otherwise adequately provided for by ERISA</u>. According to the Court, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would not be 'appropriate.'" *Id.* at 515, 116 S. Ct. at 1079.

Following this instruction, we held in *Katz* that the plaintiff had no Section 502(a)(3) cause of action because, at the time the district court dismissed her Section 502(a)(3) claim, she had an adequate remedy under Section 502(a)(1)(B). *Katz*, 197 F.3d at 1089; *see also Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (commenting that "following [*Varity*], federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)"). We further held that the availability of relief under Section 502(a)(3) was in no way dependent on the success or failure of the Section 502(a)(1)(B) claim because "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor." *Katz*, 197 F.3d at 1089; *accord Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *see also Hembree ex rel. Hembree v. Provident Life and Accident Ins. Co.*, 127 F. Supp. 2d 1265, 1273-74 (N.D. Ga. 2000) (holding that a plaintiff could not assert a Section 502(a)(3) claim when the contractual statute of limitations barred his Section 502(a)(1) claim).

*Ogden*, 348 F.3d at 1287 (emphasis added).

Consequently, because Section 502(a)(1)(B) adequately addresses Ms. Blair's benefits-related injury under ERISA, her LTD Claim cannot be salvaged by resorting to ERISA's conditional catchall provision by invoking waiver, judicial estoppel, or any other equitable doctrine against MetLife. Thus, for all the foregoing reasons, MetLife's Dismissal Motion is due to be granted in terms of dismissing *Blair II*.[12]

MetLife also has included a one-sentence tagalong request for attorney's fees and costs at the very end of its Dismissal Motion. (Doc. 29 at 15);[13] (*see also* Doc. 35 at 8 n.7; *id.* at 9). Because MetLife has wholly failed to set out the appropriate standard(s) for this court to apply, much less quantified and substantiated the reasonableness of the attorney's fees and costs that it seeks to recover from Ms. Blair, that portion of its Dismissal Motion is due to be denied.

### B.   Ms. Blair's Amend Motion

The court has studied Ms. Blair's proposed amended complaint (Doc. 28 at 3-7 ¶¶ 1-17)[14] that she incorporated into her Amend Motion, as well as MetLife's

---

[12]   The court rejects as undeveloped and unpersuasive, *see infra* at 20-21, Ms. Blair's one-sentence statement about tolling and the accompanying non-contextualized block quote from 29 C.F.R. § 2560.503-1(c)(3), which she incorrectly identifies as "§ 2560.503-(c)(3)." (Doc. 34 at 25-26).

[13]   All page references to Doc. 29 correspond with the court's CM/ECF numbering system.

[14]   All page references to Doc. 28 correspond with the court's CM/ECF numbering system.

18

opposition. (Doc. 30). Because, with respect to those allegations pivotal to the court's Rule 12(b)(6) analysis, the amended assertions are essentially the same as those included in her initial complaint (*see, e.g.*, Doc. 28 at 3 ¶ 4 ("MetLife denied LTD benefits and MetLife denied Blair's administrative appeal on 1/30/09.")), Ms. Blair still has not stated a plausible ERISA claim. Consequently, her Amend Motion is due to be denied as futile.

### C.    Ms. Blair's Remaining Motions

Ms. Blair's Compel and Sur Reply Motions are due to be termed as moot, as nothing within either filing addresses the key underpinnings of the court's reasons for granting MetLife's Dismissal Motion. As explained above, the LTD Claim in *Blair II* consists of disability records submitted by Ms. Blair <u>after</u> MetLife had <u>finally denied</u> her benefits under the Plan. Seeking to impose liability upon MetLife in its handling of these temporally deficient submissions is simply an implausibility under ERISA, <u>even if MetLife did, indeed, "do Ms. Blair wrong</u>"[15] in agreeing to conduct a courtesy review, but never providing her with any results. More specifically, no amount of discovery from MetLife about "further reviews" or "second appeals" (Doc.

---

[15] As set forth in § II.A, *supra*, *Twiqbal*'s plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Ms. Blair's complaint does not even clear the less demanding "the-defendant-unlawfully-harmed-me" hurdle. Instead, all she has are conclusory allegations that MetLife harmed her in a manner that is <u>not unlawful</u> under ERISA.

37 at 2) will legally transform Ms. Blair's dispute into one protected under the Plan or by ERISA.

Similarly, nothing mentioned in Ms. Blair's proposed sur reply (Doc. 36 at 3-4) causes the court to alter its analysis of *Blair II*'s inherently implausible nature. Thus, the court's ruling on the Dismissal Motion remains favorable to MetLife with or without regard to the discovery sought by Ms. Blair in her Compel Motion or the points of clarification raised in her Sur Reply Motion's proposed brief.

Alternatively, Ms. Blair's Compel and Sur Reply Motions are due to be denied as undeveloped. With the notable exceptions of motions that are either filed "jointly" or as "unopposed," this court rarely, if ever, grants a motion that is supported solely by the moving party's counsel's *ipse dixit*. Furthermore, as Ms. Blair ineffectively has done here, offering only a one- or two-sentence statement that meagerly requests relief while simultaneously omitting any on-point authorities (Doc. 36 at 1; Doc. 37 at 1) is a perfunctorily-made and, ultimately, an entirely unpersuasive, motion. *Cf. Flanigan's Enters., Inc. v. Fulton Cty.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam), *superseded by statute on other grounds as recognized in* 596 F.3d 1265 (11th Cir. 2010) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made

20

without citation to authority is insufficient to raise an issue before the court).

## IV.    Conclusion

Therefore, MetLife's Dismissal Motion is due to be granted in part and otherwise denied. Further, Ms. Blair's Amend Motion is due to be denied and her Compel and Sur Reply Motions are due to be termed as moot or, alternatively, denied. The court will enter a separate order of dismissal consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 2nd day of March, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge